UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 24-20511-CIV-JB-PMH

Mid-Castle Development Limited,

    Plaintiff,

v.

Liqueous LP and Jacob Fernane,

    Defendants.

_____/

---

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

---

Daniel B. Ravicher
Florida Bar No. 102809
ZEISLER PLLC
777 Brickell Avenue Fl 5
Miami, FL 33131
Tel.: (786) 505-1205
dan@zeisler-law.com

Angus F. Ni
MORROW NI LLP
506 2nd Ave, Suite 1400
Seattle, WA 98104
Tel.: 646-453-7294
angus@moni.law

*Attorneys for Plaintiff*

Plaintiff Mid-Castle Development Limited ("Mid-Castle" or "Plaintiff") sur-replies to Defendants Liqueous LP and Jacob Fernane's reply to their motion to dismiss and to compel arbitration. This sur-reply addresses solely the new facts in Defendants' Reply: (i) their belated agreement to FINRA's additional terms: and (ii) that the FINRA arbitration agreement was entered into by mistake.

## I. FACTS

On May 1, 2023, FINRA requested that the parties accept a set of additional terms before it would administer an arbitration between them, giving a deadline of May 31, 2024 to respond or face closure of the arbitration. Dkts. 50-2. Plaintiff immediately communicated this to Defendants' counsel. Dkt. 50-3. Plaintiff's e-mail to Defendants' then-counsel contained a link to the terms. *Id.* ("https://www.finra.org/arbitration-mediation/rules-case-resources/special-procedures/guidance-disputes-between-investors-and-investment-advisers-are-not-finra-members.") ("Additional Terms")

The Additional Terms specifically required that the parties agree that "FINRA cannot enforce awards entered against non-member I[nvestment]A[dvisor]s and/or their employees (because FINRA is not a Self-Regulatory Organization for IAs)." *Id.* It also made clear that "Prevailing parties may enforce awards entered against non-member IAs and/or their employees in a court of competent jurisdiction pursuant to applicable state or federal law." *Id.*

This is directly contrary to the parties' arbitration agreement (the "Agreement"), which states that "[t]he Parties further agree that FINRA arbitration [] shall have jurisdiction for purposes of enforcing all of the terms of provisions of the Agreement, including, but not limited to, any relief sought for a breach of or default of this Agreement." Dkt. 50, at 1.

On June 10, 2024, ten days after FINRA's deadline had passed and after FINRA had terminated the arbitration, Defendants filed a reply in support of their motion to compel. Dkt. 54. The reply stated that:

    i. Defendants had proposed, and Plaintiff had agreed to the FINRA arbitration Agreement by ***mistake***. *Id.* at 3 ("there was a requirement that disputes be arbitrated by FINRA because Defendants' former attorney thought—given their business—that Defendants were members of FINRA. They were not.")

    ii. "Defendants were unaware of any deadline to pay FINRA, and Defendants certainly would have paid them if they had known that money was owing to them." *Id.*

      iii.    "Defendants also have no issue with agreeing to the standard FINRA arbitration terms. Apparently, these are the reasons that led FINRA to not proceed with the arbitration. Defendants understand that this arbitration action can be refiled with FINRA and the arbitration can proceed promptly." *Id.*

On the basis of these assertions, Defendants minimize FINRA's declination to administer as one "for failure to pay fees and sign forms." *Id.* at 2.[1]

## II.    **ARGUMENT**

In essence, Defendants' point is that because they now belatedly agree to FINRA's additional terms, Plaintiff must also agree. *Id.* at 3. This fails for three main reasons.

***No agreement to agree***. Plaintiff agreed to FINRA arbitration with FINRA having "jurisdiction for purposes of enforcing" any award. Dkt. 50, at 1; *cf.* Dkt. 31-2, at 7 (§ 23, Agreement).

FINRA's new terms require Plaintiff to agree to the opposite, that "FINRA cannot enforce awards" entered against Defendants. *See* Additional Terms. Defendants suggest that because they agree to these contrary terms, then Plaintiff must agree because of the Agreement to arbitrate. Dkt. 54, at 2-3. In other words, that Plaintiff agreed to agree to FINRA's additional terms.

But the law is clear "[a]n agreement to agree in the future is an 'agreement for which there is no remedy and which is thus unenforceable.'" *Specialized Transp v. Nestle Waters N.A.*, 356 F. App'x 221, 229 (11th Cir. 2009). Plaintiff never did, and does not now agree to the Additional Terms, which directly contradict the actual Agreement.

***Admitted mistake voids the arbitration agreement***. It is well settled that ordinary contract principles, including "mistake", may render an arbitration agreement "null and void." *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005).

Here, the Agreement is explicit that the parties wanted FINRA arbitration and for FINRA *itself* to possess jurisdiction to enforce any arbitration award. As Defendants now *admit*, they agreed to FINRA arbitration by mistake. Dkt. 54, at 3. Given that the arbitration agreement was proposed and entered into by mistake as to both Defendants' FINRA membership *and* FINRA's ability to enforce an award, the Agreement is demonstrably null and void.

---

[1] The assertion is wrong factually, FINRA had no issues with fee payment, as Plaintiff paid the fee. Dkt. 50-2 (FINRA receipt containing "Payment Confirmation.")

***Compelling arbitration based on belated, unilateral "agreement" is inequitable***. Here, Defendants waited till 10 days after a known deadline to express their unilateral agreement to the Additional Terms. Until that point, they did not even attempt to engage or express any view on FINRA's request and deadline. Had they done so, Plaintiff would have explained that it does not agree, and the parties perhaps could have worked out some compromise.

But, rightly or wrongly, Plaintiff can no longer abide by continuing delay. Indeed, Defendants' original basis for asserting a "dispute" under the settlement agreement requiring FINRA arbitration was that they had reached some "new agreement" with someone else purporting to represent Plaintiff. Dkt. 31-3 (Fernane Decl.) ¶¶ 3-4. But, instead of submitting evidence of an actual "new agreement," Defendants have shifted to claiming that this entire dispute, as opposed to a dispute over the existence of some "new agreement", is subject to the arbitration *while still* in contempt of the TRO.

In other words, Defendants are saying that, by agreeing to settle, then subsequently: (i) defaulting on the settlement; (ii) defaulting with respect to FINRA's Additional Terms until *after* its deadline and allowing the arbitration to terminate; and (iii) providing no evidence of even an actual *dispute* under the Settlement Agreement, Defendants can now compel Plaintiff to agree to arbitration terms that directly contradict the parties' agreement to arbitrate.

All this, despite Defendants' *admitting* both in and out of the Settlement Agreement that they currently control Plaintiff's stock without having paid any consideration. Dkt. 19-1 (Fernane: "As I stated I would return the stock ... ."); Dkt. 31-2 (settlement), at 1.

Respectfully, this evidence is dispositive of Plaintiff's conversion and declaratory judgment claims. If the Court declines to compel arbitration (which it should), Plaintiff will immediately move for summary judgment, which Plaintiff submits will resolve this dispute faster.

### III.   CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to compel arbitration.

Respectfully submitted this 20th day of June, 2024.

/s/ *Daniel B. Ravicher*
Daniel B. Ravicher
Florida Bar No. 102809
ZEISLER PLLC
777 Brickell Avenue Fl 5
Miami, FL 33131
Tel.: (786) 505-1205
dan@zeisler-law.com

Angus F. Ni (*pro hac vice*)
MORROW NI LLP
506 2nd Ave, Suite 1400
Seattle, WA 98104
Tel.: 646-543-7294
angus@moni.law

*Attorneys for Plaintiff*