**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 24-20511-CIV-JB-PMH

Mid-Castle Development Limited,

      Plaintiff,

v.

Liqueous LP and Jacob Fernane,

      Defendants.

_____/

---

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' EXPEDITED MOTION TO
QUASH THIRD-PARTY SUBPOENAS**

---

Daniel B. Ravicher
Florida Bar No. 102809
ZEISLER PLLC
80 SW 8th St Ste 3110
Miami, FL 33130
Tel.: (786) 505-1205
dan@zeisler-law.com

Angus F. Ni
MORROW NI LLP
506 2nd Ave, Suite 1400
Seattle, WA 98104
Tel.: 773-543-3223
angus@moni.law

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A. The Motion Fails as A Matter of Law, Under Rule 26(c), And The Local Rules. ............................................................................................................ 2

    B. The Arbitration Agreement Did Not Deprive This Court of Jurisdiction to Order Injunctive Relief And Accompanying Discovery. ..................................... 4

    C. Defendants Have Failed to Show Good Cause for A Protective Order. ................. 6

III. CONCLUSION ..................................................................................................... 10

## I.   INTRODUCTION

Defendants simultaneously moved to quash Plaintiff's third-party subpoenas and for a protective order because recently received third party discovery has confirmed what Plaintiff suspected all along: (i) that despite Defendants representation to the Court that they still possessed all the disputed stock, they in fact dumped half of it for millions in profit; and (ii) they transferred the rest to a number of brokerages. Having been caught red-handed in lying to the Court, Defendants now seek to end third-party discovery. Defendants' Motion fails on several grounds.

*First*, the motion fails as a matter of law. It is well settled that Defendants have no standing to quash subpoenas served on third-party banks and broker-dealers because they have no privacy or privilege over the financial records subpoenaed, which are business records of non-parties. The motion for a protective order is also procedurally defective, as Defendants failed to confer with Plaintiff as required under Rule 26(c) and the local rules. Finally, the Motion is untimely, since Defendants were notified of the subpoenas and provided with all productions for months and took no action. Tellingly, Defendants filed this Motion only *after* impeaching information was uncovered through the same third-party discovery they seek to quash now.

*Second*, the motion is substantively frivolous. Defendants' argument is basically that arbitration deprives the Court of jurisdiction. But prevailing caselaw teaches that courts retain the authority to issue injunctive relief and order discovery to aid arbitration. The Court has also consistently affirmed that the TRO that ordered third-party discovery is still in full force.

*Third*, Defendants have failed to meet the high burden of demonstrating good cause for a protective order. Rather, they relied solely on falsehoods and assertions of harm with *zero* evidence. And, undermining their unsupported grievances, no subpoenas would have been served had they simply produced the TRO-ordered information, which they never did and, apparently, never will.

## II.     ARGUMENT

**A.      The Motion Fails as A Matter of Law, Under Rule 26(c), And The Local Rules.**

   **1.       Defendants Have No Standing to Quash Subpoenas To Financial Institutions.**

It is well established that, absent a demonstration of a "personal right or privilege with respect to the materials subpoenaed," a party has no standing to challenge a subpoena directed to a non-party. *Popoli v. Ft. Myers Lodge #1899 Loyal Ord. of Moose, Inc.*, 2015 WL 9031929, at *2 (M.D. Fla. Dec. 16, 2015).

In Florida federal courts, "Defendants do not have standing under rule 45 to quash the subpoenas regarding [their] financial records." *Id.* at 3 (collecting cases); *see also Zurich Am. Ins. Co. v. Hardin,* 2019 WL 3082608, at *2 (M.D. Fla. July 15, 2019) (same) ("*Zurich*"); *Patel v. Fed. Ins. Co.*, 2024 WL 916558, at *2 (M.D. Fla. Mar. 4, 2024) (same). This is because Defendants, as customers of the financial institutions, have "no legitimate expectation of privacy in the contents of … banking documents subpoenaed." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

This is the case here. The financial documents subpoenaed are business records of non-parties. Defendants have not shown any expectation of privacy in those records. Nor could they. Accordingly, Defendants lack standing to quash the subpoenas.

   **2.       Defendants Failed to Satisfy the Meet and Confer Requirement And To Include the Requisite Certification.**

Pursuant to Federal Rule of Procedure 26(c), a motion to quash and/or for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

No such certification was attached to the Motion. Indeed, Defendants did not meet and confer with Plaintiff regarding this Motion. They did not even try. Plaintiff first became aware of

the motion when it received its NEF from ECF. Defendants' failure to confer, on its own, warrants

denial. *See AmTrust Bank v. Alvarez*, 2020 U.S. Dist. LEXIS 142008 (S.D. Fla. Aug. 10, 2020)

(denying the motion for protective order due to its failure to include the requisite certification)

("*AmTrust Bank*"); *In re Antonio*, 642 B.R. 337, 338 (Bankr. M.D. Fla. 2022) (the court "would

be required to deny the proposed motion for protective order" without the requisite certification).

Moreover, by failing to include a meet and confer certification, Defendants also failed to

comply with Southern District of Florida Local Rule 7.1(a)(3), which requires that:

> Prior to filing any motion in a civil case . . . counsel for the movant shall confer
> (orally or in writing), or make reasonable effort to confer (orally or in writing), with
> all parties or non-parties who may be affected by the relief sought in the motion in
> a good faith effort to resolve by agreement the issues to be raised in the motion. ...

"This rule, which 'ha[s] the force of law' and should be followed." *AmTrust Bank*, at *2 (citing

cases). "Failure to comply with the requirements of this Local Rule may be cause for the Court to

grant or deny the motion and impose on counsel an appropriate sanction, which may include an

order to pay the amount of the reasonable expenses incurred because of the violation, including a

reasonable attorney's fee." Local Rule 7.1(a)(3).

### 3.       The Motion is Untimely and Unconscionable.

"[A] motion for a protective order is generally untimely if it is made after the date the

discovery material was to be produced." *Partners Insight, LLC v. Gill*, 2023 WL 5352310, at *5

(M.D. Fla. Aug. 21, 2023) (citing *Laughon ex rel. Laughon v. Jacksonville Sheriff's Off.*, 2007 WL

1247305, at *2 (M.D. Fla. Apr. 30, 2007)).

Defendants were notified of the subpoenas and were aware of the production due dates.

Defendants were also given all subpoena productions. They did nothing for months. It was only

*after* Plaintiff's recent submissions to the Court containing damning evidence against Defendants

revealed by the subpoenas and impeaching their on-the-record representations to the Court, that

Defendants now seek to quash. The Motion should be denied as untimely.

The motion is also unconscionable, given its purpose is to shield from the Court evidence

of Defendants' false statements to the Court and violation of the TRO.

**B.      The Arbitration Agreement Did Not Deprive This Court of Jurisdiction to Order Injunctive Relief And Accompanying Discovery.**

Defendants' only legal argument supporting their motion is that arbitration deprives the

Court of jurisdiction over the entire matter. *See* Mot. at 4-5. Defendants did not cite a single case

directly to the point to support this assertion, and the law is the opposite.

As detailed in Plaintiff's Motion for Contempt, regardless of whether this case remains in

court or proceeds to arbitration, the Court retains its authority to issue injunctive relief, pursuant

to which the third-party subpoenas were issued. *See* Dkt No. 34, at 5-6 (citing *Jeremiah's Int'l*

*Trading Co., Inc. v. Ren* Media *Grp. USA, Inc.*, 2017 WL 5900111, at *4 (M.D. Fla. Nov. 14,

2017), *report and recommendation adopted,* 2017 WL 5889756 (M.D. Fla. Nov. 29, 2017)

(granting preliminary injunctive relief where the arbitration agreement is silent as to whether the

injunctive relief should be determined in arbitration); *see also American Express Financial Adv.*

*v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (reversing denial of preliminary injunction

premised on a finding that injunctive relief was reserved for the arbitrator and instructing district

court to rule substantively on injunctive relief)).

Indeed, because Defendants inserted the arbitration clause while the TRO was in force and

did not specifically exclude the Court's authority on this matter, these principles apply with greater

force. *Id.* (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1350

(M.D. Fla. 2002) ("[the] contract is silent on the topic of the issuance of an injunction in order to

maintain the status quo pending arbitration," "even though his agreement specifies that all disputes

shall be settled by arbitration, this Court has the authority to issue an injunction pending arbitration

in order preserve the status quo and to ensure that the parties get a meaningful arbitration of their

dispute.") (citation omitted); *see also Jameson v. Pine Hill Dev., LLC*, 2007 WL 623807, at *2

(S.D. Ala. Feb. 23, 2007) (where an agreement provides that "[a]ny dispute or claim between the

parties which shall arise from or [is] related in any way to this contract shall be submitted to

arbitration," holding that "the existence of an arbitration provision that may govern this dispute in

no way impairs the Court's authority to grant preliminary injunctive relief to preserve the status

quo pending arbitration ... .")).

In sum, arbitration is a creature of contract. Here, Defendants contracted for arbitration

*while* the TRO that ordered third party discovery was pending. Yet the agreement: (i) explicitly

provided that this case would not end until the settlement was fully performed; and (ii) did not

deprive the court of jurisdiction to enforce injunctive relief. Accordingly, arbitration does not

deprive this court of jurisdiction.

Finally, the Court has repeatedly affirmed that the TRO remains in full force. In the recent

Report and Recommendation, the Court acknowledged:

> While the temporary restraining order was entered early in this case's proceedings,
> it has remained valid and in effect past the typical length of time for temporary
> restraining orders. Its duration was initially extended in preparation for a
> preliminary injunction hearing. Then the order was left in place due to the parties
> entering into a settlement agreement that required essentially the same performance
> as ordered in the temporary restraining order and included an arbitration clause.

Dkt No. 69, at 4. The Court then concluded that "the entry of the temporary restraining

order, ***which has never been dissolved and remains in force***, provides this Court with

jurisdiction such that the undersigned recommends the Court deny the portion of

Defendants' motion that moves to dismiss the case for lack of jurisdiction." *Id*. at 4-5

(emphasis added).

Accordingly, the TRO remains in full force and effect and the Court retains jurisdiction over matters related to it, including discovery conducted pursuant to the TRO. Further, the Settlement Agreement itself says this case should not be dismissed unless and until Defendants deliver the shares to Plaintiff, which it has not done and apparently now cannot be, given that Defendants have already sold half of the shares and no longer possess them.

**C.      Defendants Have Failed to Show Good Cause for A Protective Order.**

Under Rule 26(c), "the court where the action is pending . . . may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "When evaluating whether a movant has satisfied his burden of establishing good cause for a protective order, a court should balance the non-moving party's interest in obtaining discovery against the moving party's harm that would result from the discovery." *Zurich*, at *4-5 (citing *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

Here, the purported harm to Defendants is (i) the result of their own failure to produce the same subpoenaed information; (ii) unsupported; and (iii) outweighed by Plaintiff's strong interest in discovery and the interest of justice.

**1.      Defendants Could Have Avoided *All* Third-Party Discovery By Producing Information Themselves.**

As a threshold matter, Defendants' own failure to produce the TRO-mandated discovery necessitated the third-party subpoenas. The TRO is clear:

> ***Defendants shall produce***, within five (5) days of service of this Order, documents sufficient to identify the shares of Shengfeng Development Ltd or, if any such shares have been disposed of, any and all monies or assets directly flowing from the sale of such shares, anywhere in the world, currently under their direct or indirect control, including, for every bank account or other financial account: the bank or entity, its location, the account holder's name, the account number, and the current balance; and for every other type of asset, a description of the asset, its location, and its actual or estimated value.

Dkt No. 16, at 2-3 (emphasis added).

Defendants have not produced any information at all. This failure forced Plaintiff to issue subpoenas to third parties. Had Defendants complied with the TRO and produced the required documents, Plaintiff would not have needed to issue the subpoenas at all.

Defendants also claimed that Plaintiff's discovery efforts violate the Settlement Agreement. Mot. at 6. This argument is a non-starter. It is unclear which provision of the Settlement Agreement Defendants allege has been breached. In fact, the Settlement Agreement *itself requires* Defendants to produce documents in relation to the SF shares. Dkt 31-2 § 2 ("Settlement production. Defendants agree to produce evidence showing that they did not profit from trading SF stock, but rather suffered substantial losses going 'long' on SF.")

Because Defendants' failure to produce necessitated the subpoenas, and a TRO and Settlement-compliant production by Defendants could have (and still can) end third party discovery at any time, the ability to end any purported "harm" is entirely within Defendants' control. Defendants have not shown good cause for a protective order.

**2.      Defendants' Unsupported Assertions And Speculation Fail to Establish Harm.**

"It is the movant's burden to establish that compliance with a subpoena would result in an undue burden." *Zurich*, at *6 (citing *Eastwood Enters., LLC v. Farha*, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010)). "The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Stansell v. Revolutionary Armed Forces of Colom.*, 2022 WL 7030665 (S.D. Fla. Oct. 12, 2022) (citing *McBride v. Walmart Stores E., L.P.*, 2020 WL 8911052, at *1 (S.D. Fla. Feb. 4, 2020)). "This is a

heavy burden, and a court generally should not prohibit [discovery] '[a]bsent a strong showing of good cause and extraordinary circumstances.'" *Id.*

Defendants claimed four harms supposedly caused by the subpoenas, but these claims are either outright false (*i.e.* provably didn't happen), irrelevant, or are completely unsupported.

***First***, Defendants first alleged that certain banks and broker-dealers subpoenaed closed their accounts or have refused to work with them. Mot. at 3. However, Plaintiff never subpoenaed four of the entities identified, including Axos Commercial Banking, TradeStation, Centerpointe, and National City Bank of Florida. The fact that entities that have never been subpoenaed refused to work with Defendants cannot be a harm caused by the subpoenas.

Nor did Plaintiff request any entities close Defendants' accounts or cease working with them. Plaintiff's subpoenas were issued in strict compliance with the TRO, seeking only (1) restriction on transfer of SF shares and assets derived from them; and (2) production of documents in relation to the SF shares at issue. Defendants' assertions also defy common sense. Financial institutions receive subpoenas all the time and do not close the subpoenaed party's accounts. The fact that accounts have been closed suggests that Defendants have violated the financial institutions' polices, rather than any problem with routine third-party discovery.

***Second***, Defendants suggested that alleged account disclosures have disrupted Liqueous' business, and "Liqueous may not survive" without a protective order. Mot. at 3-4. They also claimed that "Liqueous cannot execute a strategy that it offered to customers," which "generated substantial revenue" in the past. *Id.*

However, Defendants did not bother to explain the nature of their "strategy," what kind of "customers" they serve, or how and why such strategy is impacted by subpoenaed disclosures. If their strategy is to steal stock, hide it at numerous third-party brokerages, sell it, then open up other

brokerage and banking accounts to launder the ill-begotten proceeds (which appears to be the case from existing productions), that is illegal.

*Third*, Defendants claimed that Plaintiff issued a subpoena to Defendant Fernane's father. There's no proof of this. In fact, Plaintiff has ***not issued subpoenas to any individuals***. Plaintiff has only issued subpoenas to financial institutions. Yet again, Defendants are lying to the Court.

Because Defendants knew who was subpoenaed and when, and also received a copy of all information produced, Defendants' above-listed falsehoods about what banks or individuals were subpoenaed were not accidental, but were meant to prejudice the Court. Indeed, if it is truly the case that someone is trying to serve Defendants at Defendant Fernane's father's address, that can only mean additional lawsuits against them have been filed by other victims.

*Finally*, Defendants also alleged that over 50 bridge financing applications were denied due to the subpoenas. But Defendants failed to supply facts such as when these applications were made, at which banks, and the reasons for denial. Defendants did not even provide copies of the supposed denials.

"[G]eneralized concerns, conclusory statements, or unsupported contentions are insufficient reasons for entry of a protective order. The moving party must demonstrate good cause with evidentiary support that each responsive document that is withheld is truly confidential and a specific harm would result from its disclosure or loss of confidentiality." *McArdle v. City of Ocala, FL*, 463 F. Supp. 3d 1288, 1289 (M.D. Fla. 2020). Defendants have done none of this.

### 3.      Plaintiff Has A Strong Interest in Obtaining Discovery.

Here, consistent with the goal of the TRO, Plaintiff's interest in obtaining discovery relates not only to proving its case, but also to locating the 2.5 million SF shares and preventing further dissipation of the shares to facilitate a meaningful recovery. In this context, "Plaintiff's interests

are important, and great care must be taken to avoid their unnecessary infringement." *Popoli v. Ft. Myers Lodge #1899 Loyal Ord. of Moose, Inc.*, 2015 WL 9031929, at *4 (M.D. Fla. Dec. 16, 2015) (internal citation omitted).

Indeed, subpoena productions have affirmed the need for third-party discovery. As detailed in contempt filings, recent subpoena productions from Citibank have revealed that ***Defendants have been deceiving Plaintiff and the Court for months***. As even the Settlement Agreement represents, under the heading "Representations and Warranties":

> After the 2,500,000 shares of SF stock. were transferred to an account under Mid-Castle's name at an omnibus account at Citi Bank neither Defendant has, either directly or through its officers, directors, employees, agents, subsidiaries, distributors, and any persons in active concert or participation with any Defendant, traded, assigned, bartered, conveyed, destroyed, encumbered, hypothecated, liquidated, mortgaged, pledged, sold, transferred, dissipated, disbursed, damaged, or in any other manner disposed of any portion of the 2,500,000 shares of SF stock[.]

Dkt. 31-2 § 8(iv). Contrary to this and numerous other representations to the effect that they were holding the shares and could return them at any time, Defendants sold at least half of the shares for ***millions in profits*** within a month after they took the shares. Dkt. No. 67 (Further Supplemental Declaration ISO contempt). The rest of the shares went out to numerous brokerages, who are being subpoenaed to produce information about what happened to the shares.

It is not surprising that Defendants want to stop more third party productions, but their numerous lies to date, including in the instant motion itself, confirm that continued third-party discovery is essential to getting to the truth here, because the truth is surely not going to come from Defendants themselves.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied. Plaintiff also requests fees for responding to this motion filed absent a meet and confer.

Respectfully submitted this 30th day of August, 2024.

/s/ *Daniel B. Ravicher*
Daniel B. Ravicher
Florida Bar No. 102809
ZEISLER PLLC
80 SW 8th St Ste 3110
Miami, FL 33130
Tel.: (786) 505-1205
dan@zeisler-law.com

Angus F. Ni
MORROW NI LLP
506 2nd Ave, Suite 1400
Seattle, WA 98104
Tel.: (773) 543-3223
angus@moni.law

*Attorneys for Plaintiff*